ORIGINAL

1   Laurence D. King (SBN 206423)
    Linda M. Fong (SBN 124232)
2   KAPLAN FOX & KILSHEIMER LLP
    350 Sansome Street, Suite 400
3   San Francisco, CA 94104
    Telephone: 415-772-4700
4   Facsimile:  415-772-4707
    Email: lking@kaplanfox.com
5          lfong@kaplanfox.com

6

7   *Attorneys for Plaintiff Gary Mabry*

    [Additional counsel listed on signature block]
8

9
                        UNITED STATES DISTRICT COURT                          **RS**
10                      NORTHERN DISTRICT OF CALIFORNIA

11  —————————————————————          **CV10      5328**
                                        )
12  GARY MABRY, Individually and On Behalf of)   Case No.: _____
    All Others Similarly Situated,         )
13                                         )   CLASS ACTION
    Plaintiff,                             )
14                                         )
                                           )
15  vs.                                    )
                                           )   **CLASS ACTION COMPLAINT FOR**
16  ROBERT I. CHEN, PETER C. HSI, LYLE D.  )   **VIOLATIONS OF THE FEDERAL**
    FEISEL, SIGRUN HJELMQUIST, JAMES W. )     **SECURITIES LAW**
17  POWER, SUSAN WANG, KEH-SHEW LU,        )
    RUDY ACQUISITION CORP., RUDY           )   **JURY TRIAL DEMANDED**
18  MERGER SUB CORP. and RAE SYSTEMS       )
    INC.,                                  )
19                                         )
    Defendants.                            )
20                                         )
                                           )
21                                         )
                                           )
22                                         )
                                           )
23  —————————————————————

24

25          Plaintiff, by his attorneys, alleges the following upon information and belief, except for

26  those allegations that pertain to plaintiff and his attorneys, which allegations are based on personal

27  knowledge. Plaintiff's information and belief is based on, *inter alia*, the investigation conducted by

28

his attorneys, including a review of the public filings of defendant RAE Systems Inc. ("RAE" or the

"Company"), press releases, news articles and publicly available information concerning RAE:

1.     Plaintiff brings this action individually and as a class action on behalf of the public shareholders of RAE in connection with the purchase of RAE by Battery Ventures VIII, L.P and Battery Ventures VIII Side Fund, L.P. ("Battery") through its affiliates, Rudy Acquisition Corp. ("Parent"), and Rudy Merger Sub Corp., a wholly-owned subsidiary of Parent ("Merger Sub") (collectively, "Battery"), for \$1.60 per share without interest (the "Merger Consideration"), pursuant to the Agreement and Plan of Merger by and among Merger Sub, and RAE dated as of September 19, 2010 (the "Merger Agreement"). Following completion of the exchange offer, Merger Sub will merge into RAE and the RAE shares not acquired in the exchange offer will convert into the right to receive the same consideration as paid in the exchange offer (the "Proposed Acquisition").

2.     The Proposed Acquisition as currently constituted is unfair to RAE shareholders because it does not adequately value the Company's future growth prospects, which will inure to Battery if the Proposed Acquisition is consummated. In fact, the Company had received two proposals above the amount offered by Battery. One of the two offers was by a strategic acquirer in the range of \$1.57 to \$1.73 per share and the other offer was made by a financial buyer for \$1.80 per share. Both offers remain outstanding.

3.     The recent historical averages for RAE's stock price demonstrate that consideration being offered by Battery is unfair and inadequate. While based on the closing price of RAE stock on September 17, 2010, the transaction has a value of \$1.60 per RAE share, representing a premium of 53.8%, the consideration being offered does not reflect the Company's intrinsic value and prospects for growth. Indeed, the Company's common stock traded higher than \$2.00 as recently as the fall 2008.

2

1    4.    Indeed, the consideration to be paid to the class members is unconscionable, unfair

2    and grossly inadequate because, among other things: (a) the intrinsic value of the stock of RAE is

3    materially in excess of $1.60 per share, giving due consideration to the possibilities of growth and

4    profitability of RAE in light of its business, earnings and earnings power, present and future; (b) the

5    $1.60 per share price is inadequate and offers an inadequate premium to the public stockholders of

6    RAE; and (c) the $1.60 per share price is not the result of arm's-length negotiations but was fixed

7    arbitrarily to "cap" the market price of RAE, as part of a plan for Battery to obtain complete

8    ownership of RAE assets and business at the lowest possible price. Defendants' action in

9    proceeding with the Proposed Acquisition is wrongful, unfair, and harmful to RAE's public

10   stockholders, and will deny them their right to share proportionately in the true value of RAE's

11   future growth in profits and earnings.

12

13

14   5.    Defendants have exacerbated their breaches of fiduciary duty by agreeing to lock up

15   the Proposed Acquisition with deal protection devices that preclude other bidders from making a

16   successful competing offer for the Company. Specifically, defendants agreed to: (i) a no-

17   solicitation provision that prevents other buyers from having access to the Company's confidential

18   information which information is necessary to formulate a bid, except under extremely limited

19   circumstances; (iii) a matching rights provision that allows Battery 2 business days to match any

20   competing proposal in the event one is made; and (iv) a provision that requires the Company to pay

21   Battery a termination fee of $3.39 million in addition to the Company possibly being obligated to

22   reimburse up to $900,000 of transaction expenses incurred by Purchaser and Merger Sub upon

23   termination of the Merger Agreement under specified circumstances. These provisions

24   substantially limit the Board of Director's ability to act with respect to investigating and pursuing

25   superior proposals and alternatives including a sale of all or part of RAE.

26

27

28

3

6. Moreover, defendants have exacerbated their breaches of fiduciary duty to shareholders by benefitting themselves at the expense of the public shareholders. Defendants Robert Chen ("Chen") and Peter Hsi ("Hsi") (the "Rollover Holders"), the Company's founder and Chief Executive Officer and founder, Vice President, and Chief Technology Officer, respectively, collectively, own approximately 18,255,441 shares or 30% of the Company's common stock (excluding any options held by the Rollover Holders). In addition, although defendants Hsi and Chen are contributing approximately 22.5% of the Company's outstanding common stock to Parent, they are unfairly (at the expense of the Company's shareholders) receiving in exchange 30% of the capital stock of Parent in addition to the approximately $7.8 million they are receiving in cash for their remaining 4,862,584 RAE shares being cashed out. Thus, defendants Hsi and Chen are unfairly receiving greater consideration than the public shareholders for their shares of the Company.

7. Defendants have also breached their duty of candor in recommending the transaction to the Company's shareholders. On October 21, 2010, RAE filed a Schedule 14A Preliminary Proxy Statement (the "Proxy") with the SEC in connection with the Proposed Acquisition pursuant to which, *inter alia*, RAE Board of Directors recommended that RAE stockholders vote "FOR" the approval and adoption of the Merger Agreement and in favor of the Proposed Acquisition. Defendants have breached their duty of candor by failing to disclose material information to Proxy shareholders necessary for them to determine whether to vote in favor of the Proposed Acquisition.

8. As explained herein, the Company's Board has breached its fiduciary duties to RAE shareholders by causing the Company to enter into the Merger Agreement that provides for the sale of RAE at an unfair price, and deprives RAE's public shareholders of maximum value to which they are entitled.

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____

9. Plaintiff and the class have suffered and will suffer irreparable injury unless defendants are enjoined from breaching their fiduciary duties and from carrying out the aforesaid plan and scheme. Plaintiff seeks to enjoin defendants from approving the Proposed Acquisition or, in the event the Proposed Acquisition is consummated, recover damages resulting from defendants' violations of their fiduciary duties of loyalty, good faith, and due care.

## JURISDICTION AND VENUE

10. The Court has jurisdiction over the subject matter of this action pursuant to section 27 of the Exchange Act, 15 U.S.C. §78aa (2008), and 28 U.S.C. §§1331 and 1337 (2008). This action is not a collusive action designed to confer jurisdiction on a court of the United States that it would not otherwise have.

11. Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(2) (2008) because RAE is headquartered in this District and a substantial portion of the transactions and occurrences complained of herein, including the defendants' primary participation in the wrongful acts detailed herein, occurred in this District. In addition, one or more of the defendants either resides in or maintains executive offices in this District.

## THE PARTIES

12. Plaintiff has been a holder of RAE common stock since prior to the transactions herein complained of and continues to hold RAE common stock as of this date.

13. Defendant RAE is a corporation duly organized and existing under the laws of the State of Delaware with its principal offices located at 3775 North First Street San Jose, California 95134. RAE together with its subsidiaries, develops and manufactures multi-sensor chemical and radiation detection monitors and networks for oil and gas, hazardous material management, industrial safety, civil defense, and environmental remediation applications. It also offers safety, environmental, and personal protection monitors and equipment; and portable and

5

1  fixed use safety products to the mining industry. RAE sells its products through its sales force, and

2  a network of sales representatives and distributors worldwide. The Company was founded in 1991.

3      14.    Defendant Robert I. Chen ("Chen") is Chairman of the Board, President, and Chief

4  Executive Officer of RAE. Chen co-founded RAE Systems in 1991 and has served as President,

5  Chief Executive Officer and a director since the Company's inception. Defendant Chen currently

6

7  serves on the board of directors of Shanghai Ericsson Simtek Electronics Company, Limited, a

8  telecommunications and electronics company.

9      15.    Defendant Peter C. Hsi ("Hsi") has served as a director of RAE. Hsi co-founded

10 RAE in 1991 and has served as Chief Technology Officer and a director since the Company's

11 inception. Prior to co-founding RAE, defendant Hsi was the chief architect for semiconductor test

12 systems at Applied Optoelectronic Technology Corporation.

13

14     16.    Defendant Lyle D. Feisel ("Feisel") has served as a director of the Board of RAE

15 since March 2001. Feisel is a private investor and educational consultant.

16     17.    Defendant Sigrun Hjelmquist ("Hjelmquist") has served as a director of RAE since

17 March 2004 and is currently a partner and chairman of the Board of Directors for the Sight

18 Executive Group. Hjelmquist currently serves on the Board of Directors of Sandvik AB, Svenska

19 Handelsbanken AB, IBS AB, EON Sverige AB, Audiodev AB, AU Systems AB and Symsoft AB.

20

21     18.    Defendant James W. Power ("Power") has served as a director of RAE since May

22 2006, and is currently the principal partner in J.W. Power & Associates, a security systems

23 development and marketing consultant group, which he founded in 1992. Defendant Power is

24 currently Chairman of the Board of Directors at MDI, Inc., a security controls systems company,

25 and has served in such capacity since June 2004. Since December 2005, Power is also a member of

26 the Board of Directors of Henry Bros. Electronics, Inc., a security systems sales and integration

27 company.

28

6

19.    Defendant Susan Wang ("Wang") has served as a director of RAE since March 2009. Defendant Wang currently serves on the board of directors of Avanex Corporation, Altera Corporation, and Nektar Therapeutics.

20.    Defendant Keh-Shew Lu ("Lu") has served as a director of RAE since March 2009. Lu has been the president and chief executive officer of Diodes Incorporated, a manufacturer of analog semiconductors, since June 2005, after serving on its board of directors since 2001.

21.    The individual defendants in ¶¶14–20 constitute the Board of RAE (the "Individual Defendants") and, by reason of their corporate directorships and executive positions, stand in a fiduciary position relative to the Company's public shareholders. Their fiduciary duties, at all times relevant herein, required them to exercise their best judgment, and to act in a prudent manner, and in the best interest of the Company's minority shareholders. Said defendants owe the public shareholders of RAE the highest duty of good faith, fair dealing, due care, loyalty, and full candid and adequate disclosure.

22.    Defendant Parent is a Delaware corporation affiliated with Battery Ventures VIII, L.P. and Battery Ventures VIII Side Fund, L.P. formed for the purpose of acquiring RAE.

23.    Defendant Merger Sub is a Delaware corporation and a wholly owned subsidiary of Parent formed for the purpose of acquiring RAE.

24.    Defendants RAE, Parent and Merger Sub are named herein as aiders and abettors to the Individual Defendants' breaches of fiduciary duty.

25.    RAE, the Individual Defendants and Battery are collectively referred to herein as "Defendants."

26.    Each Defendant herein is sued individually or as a conspirator or aider and abettor, as well as in his capacity as an officer and/or director of the Company, and the liability of each

7

1   arises from the fact that he or she has engaged in all or part of the unlawful acts, plans, schemes, or

2   transactions complained of herein.

3                              **CLASS ACTION ALLEGATIONS**

4       27.    Plaintiff brings this action on his own behalf and as a class action, on behalf of all

5   shareholders of defendant RAE (except Defendants herein and any person, firm, trust, corporation

6

7   or other entity related to or affiliated with any of the Defendants) or their successors in interest, who

8   have been or will be adversely affected by the conduct of Defendants alleged herein.

9       28.    This action is properly maintainable as a class action.

10      29.    The class of shareholders for whose benefit this action is brought is so numerous that

11  joinder of all class members is impracticable.   There are approximately 59 million shares of

12  common stock outstanding owned by thousands of shareholders of record scattered throughout the

13  United States.

14

15      30.    There are questions of law and fact which are common to members of the Class. The

16  common questions include, *inter alia*, the following:

17              a.  whether the RAE directors have breached their fiduciary duties to Plaintiff and

18                  the Class in connection with the Merger Agreement and related transactions; and

19              b.  whether Plaintiff and the other members of the Class will be damaged irreparably

20                  by Defendants' failure to take action designed to obtain the best value for the

21

22                  public stockholders' interest in RAE.

23      31.    Plaintiff is committed to prosecuting this action and has retained competent counsel

24  experienced in litigation of this nature. The claims of Plaintiff are typical of the claims of the other

25  members of the Class and Plaintiff has the same interests as the other members of the Class.

26  Accordingly, Plaintiff will fairly and adequately represent the Class.

27

28

32.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class and establish incompatible standards of conduct for the party opposing the Class.

33.     Defendants have acted and are about to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

## SUBSTANTIVE ALLEGATIONS

**Background**

34.     RAE is a leading developer and manufacturer of rapidly-deployable, multi-sensor chemical and radiation detection monitors and wireless networks for application in five key markets: oil and gas, hazardous material management, industrial safety, civil defense and environmental remediation.     The Company provides personal, portable and wireless sensor networks that enable its customers in more than 95 countries to identify safety and security threats in real-time.  The Company was founded in 1991 and originally developed technologies for the detection of hazardous materials in environmental remediation and chemical spill clean-ups.  The Company has a broad patent portfolio consisting of 14 issued U.S. patents, one patent issued in Japan, one issued and five pending EU patents, and five issued and 14 pending technology patents in China.  These patents in gas and radiation detection technology are the basis for many of the Company's products.

35.     The Company offers a comprehensive portfolio of fixed and portable breathing zone single and multi-sensor chemical and radiation detection products, many with wireless integrated systems capability.   Industrial applications include the detection of toxic industrial chemicals, volatile organic compounds and petrochemicals.  The Company's products are deployed in oil and gas facilities, petrochemical and plastics plants, steel mills and in other types of manufacturing facilities. The Company's products enable the military and first responders such as firefighters, law

9

enforcement and other emergency management personnel to detect and provide early warning of hazardous materials.

36.     RAE has significant operations in the People's Republic of China ("China"), including research and development and manufacturing operations in Shanghai. The Company owns 96% of RAE-KLH (Beijing) Co., Limited ("RAE Beijing"), a manufacturer and distributor of safety, environmental and personal protection monitors and equipment. RAE owns a 70% interest in RAE Coal Mine Safety Instruments (Fushun) Co., Ltd. ("RAE Fushun"). RAE Fushun offers a range of portable and fixed use safety products, primarily to the China coal mining industry.

37.     During fiscal year 2008, the Company's internal audit department identified certain payments and gifts made by certain personnel in the Company's operations in China that may have violated the United States Foreign Corrupt Practices Act ("FCPA"). Following this discovery, the Audit Committee of the Board of Directors initiated an independent investigation. The Company has made a voluntary disclosure to the DOJ and the SEC regarding the results of its investigation. The Company has also implemented additional policies and controls with respect to compliance with the FCPA. The FCPA and related statutes and regulations provide for potential monetary penalties, criminal sanctions and in some cases debarment from doing business with the U.S. federal government in connection with violations. The Company booked an accrual of $3.5 million in the third quarter of 2009 relating to the potential settlement of the FCPA investigation. The management team expects to have closure on the FCPA investigation in the near future.

**The Proposed Acquisition**

38.     On September 20, 2010, RAE and Battery jointly issued a press release entitled, "RAE Systems Signs Definitive Agreement to Be Acquired by Battery Ventures for $1.60 per Share," and with the subtitle, "RAE Systems to Hold Conference Call Today at 8:00 a.m. Pacific Time." The release stated in part:

10

SAN JOSE, CA--(Marketwire - 09/20/10) - RAE Systems Inc. (AMEX:RAE - News), a leader in delivering innovative sensor solutions to serve industrial, energy, environmental, and government safety markets worldwide, signed a definitive agreement to be acquired for $1.60 per share in cash by an affiliate of Battery Ventures, a multi-stage investment firm focused on technology and innovation worldwide. The purchase price represents a premium of approximately 53.8% over RAE Systems' closing share price on September 17, 2010, and a premium of approximately 85.1% over RAE Systems' average closing share price for the 30 trading days ending on September 17, 2010.

This transaction is subject to customary closing conditions, including the approval of RAE Systems' stockholders. There is no financing condition to the transaction.

"Over the years, we have built a strong reputation in the safety industry, a quality, diverse product and technology portfolio, and a dedicated, result-oriented employee base, all of which are contemplated in this transaction," said Robert Chen, RAE Systems president and chief executive officer. "After an extensive review of our strategic alternatives, the special committee of our board of directors has determined that this transaction provides for the best value to our stockholders. RAE Systems has successfully navigated through a great deal of change over the past few years. With this newest evolution, RAE Systems will leverage Battery Ventures' strategy and vision to help increase its industry presence via organic growth and complementary acquisitions. Looking ahead, we will continue to execute on our strategy to be a leading innovator through the advancement of intelligent, connected, wireless gas and radiation detection solutions. Throughout this transaction, RAE Systems management and employees will remain committed to customer service, quality and operating excellence."

39. Pursuant to the Merger Agreement, each share of Company common stock accepted by Merger Sub will be exchanged for $1.60 in cash.

40. The Proposed Acquisition serves no legitimate business purpose of RAE but rather is an attempt by defendants to enable Battery to benefit unfairly from the transaction at the expense of RAE's public shareholders. The Proposed Acquisition will, for a grossly inadequate consideration, deny plaintiff and the other members of the class their right to share proportionately in the future success of RAE and its valuable assets, while permitting Battery to reap huge benefits from the transaction.

11

41.     The consideration to be paid to the class members is unconscionable, unfair and grossly inadequate because, among other things: (a) the intrinsic value of the stock of RAE is materially in excess of $1.60 per share, giving due consideration to the possibilities of growth and profitability of RAE in light of its business, earnings and earnings power, present and future; (b) the $1.60 per share price is inadequate and offers an inadequate premium to the public stockholders of RAE; and (c) the $1.60 per share price is not the result of arm's-length negotiations but was fixed arbitrarily to "cap" the market price of RAE, as part of a plan for Battery to obtain complete ownership of RAE assets and business at the lowest possible price.

42.     Moreover, defendants have exacerbated their breaches of fiduciary duty to shareholders by benefitting themselves at the expense of the public shareholders. Defendants Chen and Hsi, collectively, own approximately 18,255,441 shares or 30% of the Company's common stock (excluding any options held by the Rollover Holders). These shares are worth approximately $29.2 million at $1.60 per share. In connection with the Merger, defendants Chen and Hsi have agreed to contribute, immediately prior to the effective time of the Merger, 13,392,857 shares, the Rollover Shares, in exchange for 30% of the capital stock of Parent. The remaining 4,862,584 shares of the Company's common stock owned by Chen and Hsi will be cashed out in the merger at $1.60 per share (or a total of approximately $7.8 million). Although defendants Hsi and Chen are contributing approximately 22.5% of the Company's outstanding common stock to Parent, they are unfairly (at the expense of the Company's shareholders) receiving in exchange 30% of the capital stock of Parent in addition to the approximately $7.8 million they are receiving in cash for their remaining 4,862,584 RAE shares being cashed out. Thus defendants Hsi and Chen are unfairly receiving greater consideration than the public shareholders for their shares of the Company.

12

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____

43.     The Proposed Acquisition as currently constituted is unfair to RAE shareholders because it does not adequately value the Company's future growth prospects, which will inure to Battery if the Proposed Acquisition is consummated.

44.     Indeed, the recent historical averages for RAE's stock price demonstrate that consideration being offered by Battery is unfair and inadequate. While based on the closing price of RAE stock on September 17, 2010, the transaction has a value of $1.60 per RAE share, representing a premium of 53.8%, the consideration being offered does not reflect the Company's intrinsic value and prospects for growth. Indeed, the Company's common stock traded higher than $2.00 in the fall 2008.

45.     In addition to agreeing to a sale of the Company at an unfair price, the Individual Defendants agreed to onerous deal protection devices in breach of their fiduciary duties to RAE shareholders, which prevent a superior offer from being made for the Company. Specifically, defendants agreed to: (i) a no-solicitation provision that prevents other buyers from having access to the Company's confidential information which information is necessary to formulate a bid, except under extremely limited circumstances; (iii) a matching rights provision that allows Battery 2 business days to match any competing proposal in the event one is made; and (iv) a provision that requires the Company to pay Battery a termination fee of $3.39 million in addition to the Company possibly being obligated to reimburse up to $900,000 of transaction expenses incurred by Purchaser and Merger Sub upon termination of the Merger Agreement under specified circumstances. These provisions substantially limit the Board of Director's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of RAE.

46.     The terms of the Merger Agreement are structured to ensure that Battery, and only Battery, ultimately acquires RAE, regardless of whether such terms are designed and/or serve to maximize shareholder value.

13

47. Additionally, the Company has failed to negotiate or allow for a majority of the minority provision requiring a majority of the shareholders excluding insiders to approve the Proposed Acquisition.

48. The Termination Fee and expense obligation are deterrents to other potential bidders and provide defendants with an unearned windfall at the expense of the Company's public shareholders if a superior bid emerges.

49. Accordingly, the terms of the Merger Agreement substantially limit the Board's ability to act with respect to investigating and pursuing superior proposals and alternatives including a sale of all or part of RAE.

**The Proxy Is Materially Misleading and/or Incomplete**

50. On October 21, 2010, RAE filed the Proxy in connection with the Proposed Acquisition and seeking, *inter alia,* the approval of RAE shareholders of the Merger Agreement and the transactions contemplated thereby.

51. The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information thereby rendering the shareholders unable to make an informed decision on whether to vote in favor of the Proposed Acquisition.

52. For example, the Proxy completely fails to disclose material information concerning the process, events and analyses leading up to the Proposed Acquisition including the failure to disclose alternatives considered by UBS Securities LLC ("UBS") which assisted the Company in its "market check" and provided a fairness opinion to RAE's Board. By way of example:

   i. The Proxy fails to disclose the status, potential impact and value of a potential settlement with the SEC and the Department of Justice regarding the investigation in connection with the identified payments and gifts made by certain personnel in the Company's operations in China that may have violated the FCPA. Additionally,

14

1       other than Bidder A, it fails to disclose whether the Company provided satisfactory

2       information regarding the FCPA investigation to potential bidders.

3   ii.     The Proxy fails to disclose whether a dissolution, liquidation process and/or

4       exclusion of any ownership interest or liabilities of RAE Fushun prior to closing of

5       the Proposed Acquisition would add value to the Company as a result of the FCPA

6

7       investigation.

8   iii.    The Proxy fails to disclose whether the acquisition of the minority interest in the

9       Company's RAE-KLH joint venture in Beijing from its joint venture partner, the

10      reorganization of certain of its business operations and the commencement of a

11      liquidation of this joint venture would increase value for the Company as a result of

12      the FCPA investigation.

13

14  iv.     The Proxy fails to disclose why the Compensation Committee of the Board of

15      Directors of the Company has authorized the Company to pay bonuses to certain

16      finance personnel upon execution by the Company of a settlement agreement with

17      the Commission and the DOJ with respect to their FCPA investigation.

18  v.      The Proxy fails to disclose the criteria for membership on the strategic committee.

19  vi.     The Proxy fails to disclose the criteria for the selection of the 36 prospective

20      acquirers.  This is significant in light of the Company being contacted the following

21      day after the announcement of the Proposed Acquisition by a prospective acquirer

22      with a higher offer than the $1.60 per share offer by Battery.

23

24  vii.    The Proxy fails to disclose reasons, if any, why the prospective bidders were not

25      interested in pursuing a transaction with the Company.

26  viii.   The Proxy fails to disclose whether the increased $1.60 per share offer by Battery

27      was arrived at following the agreement between Battery and the Rollover Holders.

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____

ix.     The Proxy fails to disclose the selection process of the financial advisor and why the special committee retained UBS.

x.      The Proxy fails to disclose whether Battery was advised of other offers prompting its increased offer to $1.60 per share for the Company.

xi.     The Proxy fails to disclose whether prospective acquirers were advised that they were required to provide Rollover Holders an equity interest in the future company.

xii.    The Proxy fails to provide the three year business plan and forecast prepared by management in February 2010 and whether it varied from either of the April 2010 five year financial forecasts that included two scenarios: one with an economic recovery in 2011 (the "2011 Recovery Model"), and another with an economic recovery in 2012 (the "2012 Recovery Model").

xiii.   The Proxy fails to disclose the complete 2011 Recovery Model even though it was provided to potential bidders. Also, the Proxy fails to disclose why the Company determined the 2012 Recovery Model was more likely than the 2011 Recovery Model.

53.     The Proxy fails to provide the Company's shareholders with material information and/or provides them with materially misleading information including the failure to disclose alternatives considered by underlying methodologies, projections, key inputs and multiples relied upon and observed by UBS, the Company's financial advisor, so that shareholders can properly assess the credibility of the various analyses performed by them and relied upon by the Board in recommending the Proposed Acquisition. In particular, RAE's management provided the financial advisor with financial forecasts and estimates which reflected alternative scenarios regarding the strategic direction, prospects of the Company in the event that the merger were not consummated.

54.     In addition, the Proxy fails to disclose the underlying methodologies, projections,

16

1    key inputs and multiples relied upon and observed by the co-financial advisors so that shareholders

2    can properly assess the credibility of the various analyses performed by them.  In particular, the

3    Proxy is deficient and should provide, *inter alia*, the following:

4
          i.      In the *Selected Companies Analysis*, (a) the criteria for selecting the companies; (b)
5
                  the Enterprise Value as a multiple of estimated 2010 and 2011 EBITDA for each
6
7                 selected company; and (c) the closing stock price as a multiple of estimated 2011

8                 EPS.

9         ii.     In the *Selected Transactions Analysis*, (a) the criteria for selecting the transactions;

10                (b) terms of each transaction; and (c) the transaction value as a multiple of the latest

11                twelve months EBITDA for each transaction.

12        iii.    In the *Discounted Cash Flow Analysis*, (a) the definition of unlevered cash flows; (b)
13
                  the basis for the selection of the EBITDA terminal value multiples of 8.0x to 9.0x;
14
15                (c) the basis for the selection of the discount rates ranging from 20.0% to 25.0%; (d)

16                the basis for selecting end-of-period discounting convention, as opposed to mid-

17                period discounting convention; and (e) the *Discounted Cash Flow* analysis based

18                upon the 2011 Recovery Model and/or variances to the 2012 Recovery Model.

19        iv.     The fees the Company has agreed to pay UBS in the event an alternative transaction

20                arises.
21
22        55.     By virtue of their positions as directors and senior officers of the Company, the

23   Individual Defendants have access to and knowledge of RAE's internal financial information which

24   reveals the true financial and operating condition and prospects of the Company, and have shared

25   such information with Battery.  Defendants are using this information to benefit themselves at the

26   expense and to the detriment of RAE and the public shareholders.

27

28

                                                    17

1    56.    Moreover, the Individual Defendants are motivated by their desire to secure personal

2 benefits as a result of the Proposed Acquisition. Certain directors and/or officers stand to reap tens,

3 if not hundreds, of millions of dollars of personal benefits at the expense of the Company and its

4 public shareholders if the Merger is consummated, including the right to receive change-in-control

5
6 benefits (such as the acceleration of their stock options), thus putting their own personal financial

7 interests irreconcilably in conflict with the interests of the Company and its public shareholders.

8    57.    The RAE Board thus acceded to Battery's desire to structure a sale of the Company

9 that unfairly benefits Battery at the expense of the public stockholders.

10    58.    The Individual Defendants' actions in proceeding with the Proposed Acquisition are

11 wrongful, unfair, and harmful to RAE's public stockholders, and will deny them their right to share

12
13 proportionately in the true value of RAE's valuable assets, profitable business, and future growth in

14 profits and earnings. The Individual Defendants have breached their fiduciary duties to RAE

15 shareholders and failed to maximize shareholder value by causing the Company to enter into the

16 Merger Agreement that provides for the sale of RAE at an inadequate price, and deprives RAE's

17 public shareholders of maximum value to which they are entitled.

18    59.    Plaintiff has no adequate remedy at law.

19                    **FIRST CAUSE OF ACTION**

20
21    **Class Claim Against the Defendants for Violation
of §14(a) of the Securities Exchange Act of 1934**

22    60.    Plaintiff incorporates by reference and realleges each and every allegation set forth

23 above, as though fully set forth herein.

24
25    61.    This claim is brought by Plaintiff against the Defendants for violations of §14(a) of

26 the Securities Exchange Act of 1934, and SEC Rule 14a-9 promulgated thereunder.

27    62.    The Defendants named in this claim disseminated the false and misleading Proxy

28 which they knew or should have known was misleading in that it contained misrepresentations and

18

1    failed to disclose material facts necessary in order to make the statements made, in light of the

2    circumstances under which they were made, not misleading.

3        63.    The Proxy was prepared and disseminated by Defendants named in this claim. It

4    misrepresented and/or concealed certain material information concerning the nature of the process

5    involved in the Proposed Acquisition and the true value of the Company. In so doing, they made

6

7    untrue statements of material facts and omitted to state material facts necessary to make the

8    statements that were made not misleading in violation of §14(a) of the 1934 Act and SEC Rule 14a-

9    9 promulgated thereunder.

10       64.    The Defendants named in this claim issued the Proxy, which was materially false

11   and misleading. The Defendants were aware of and/or had access to the true facts concerning the

12   process involved in selling the Company and the true value of the Company. However,

13

14   notwithstanding this knowledge, each of the Defendants purported to and/or approved the

15   dissemination of the false Proxy.

16       65.    Defendants permitted the Company to be sold in an effort to aggrandize their own

17   financial position and interests at the expense of RAE shareholders. By relying on the false and

18   misleading statements in the Proxy, the shareholders who are unaware of untruths, and relied

19   thereon, were directly and proximately harmed by the Defendants' wrongful conduct. By reason of

20   such misconduct, the Defendants are liable pursuant to §14(a) of the 1934 Act and SEC Rule 14a-9

21   promulgated thereunder.

22

23                          **SECOND CAUSE OF ACTION**

24                       **Claim for Breach of Fiduciary Duties**

25       66.    Plaintiff repeats and realleges each allegation set forth herein.

26

27

28

                                          19

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____

67.     The Individual Defendants have violated their fiduciary duties of care, good faith, and loyalty owed under applicable law to the public shareholders of RAE and have placed the interests of insiders ahead of the interests of RAE's shareholders.

68.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty, good faith, care and candor owed to the shareholders of RAE because, among other reasons:

a.      they failed to properly value RAE;

b.      they failed to take steps to maximize the value of RAE to its public shareholders and they took steps to avoid competitive bidding, and to give Battery an unfair advantage, by, among other things, failing to adequately solicit other potential acquirers or alternative transactions;

c.      they failed to properly value RAE and its various assets and operations;

d.      they ignored or did not protect against the numerous conflicts of interest resulting from the directors' own interests in connection with the Proposed Acquisition; and

e.      they erected unreasonable barriers to other third-party bidders.

69.     By the acts, transactions and courses of conduct alleged herein, the Individual Defendants, individually and as part of a common plan and scheme and in breach of their fiduciary duties of loyalty, good faith and due care to Plaintiff and the other members of the Class, have failed to adequately inform themselves about the true value of the Company and, by agreeing to the Proposed Acquisition with Battery, will unfairly deprive Plaintiff and other members of the Class of the true value of their investment in RAE.

70.     RAE shareholders will, if the Proposed Acquisition is consummated, be deprived of the opportunity for substantial gains which the Company may realize.

20

1    71.    By reason of the foregoing acts, practices and course of conduct, the Individual

2  Defendants have failed to exercise care and diligence in the exercise of their fiduciary obligations

3  toward Plaintiff and the other RAE public stockholders.

4    72.    As a result of the actions of Defendants, Plaintiff and the other members of the Class

5  have been and will be damaged in that they have not and will not receive their fair proportion of the

6  value of RAE's assets and businesses and will be prevented from obtaining appropriate

7  consideration for their shares of RAE common stock.

8

9    73.    Unless enjoined by this Court, the Defendants will continue to breach their fiduciary

10  duties owed to Plaintiff and the other members of the Class, and may consummate the Proposed

11  Acquisition which will exclude the Class from its fair proportionate share of RAE's valuable assets

12  and businesses, all to the irreparable harm of the Class, as aforesaid.

13

14    74.    Plaintiff and the Class have no adequate remedy at law. Only through the exercise of

15  this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and

16  irreparable injury which Defendants' actions threaten to inflict.

17                          **THIRD CAUSE OF ACTION**

18                  **On Behalf of Plaintiff and the Class Against**
                  **Parent and Merger Sub for Aiding and Abetting the**
19                  **Individual Defendants' Breaches of Fiduciary Duty**

20    75.    Plaintiff incorporates by reference and realleges each and every allegation contained

21  above, as though fully set forth herein.

22

23    76.    Parent and Merger Sub have knowingly aided and abetted the Individual Defendants'

24  wrongdoing alleged herein. Parent and Merger Sub are also active and necessary participants in the

25  Individual Defendants' plan to complete the Proposed Acquisition terms that are unfair to RAE

26  shareholders, as Parent and Merger Sub seek to pay as little as possible to RAE shareholders.

27    77.    Plaintiff has no adequate remedy at law.

28

21

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands injunctive relief in his favor and in favor of the Class and against Defendants as follows:

A.      Declaring that this action is properly maintainable as a Class action;

B.      Declaring and decreeing that the Merger Agreement was entered into in breach of the fiduciary duties of Defendants and is therefore unlawful and unenforceable;

C.      Enjoining Defendants, their agents, counsel, employees and all persons acting in concert with them from consummating the Proposed Acquisition, unless and until the Company adopts and implements a procedure or process to obtain a merger agreement providing the best possible terms for shareholders;

D.      Directing the Individual Defendants to exercise their fiduciary duties to obtain a transaction which is in the best interests of RAE's shareholders until the process for the sale or auction of the Company is completed and the best possible consideration is obtained for RAE;

E.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees; and

F.      Granting such other and further relief as this Court may deem just and proper.

G.      Plaintiff demands a trial by jury.

DATED: November 23, 2010      Respectfully submitted,

KAPLAN FOX & KILSHEIMER LLP

By: _____
Laurence D. King (SBN 206423)

22
CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Linda M. Fong (SBN 124232)
350 Sansome Street, Suite 400
San Francisco, CA 94104
Telephone: 415-772-4700
Facsimile: 415-772-4707
lking@kaplanfox.com
lfong@kaplanfox.com

Joshua M. Lifshitz
Peter D. Bull
BULL & LIFSHITZ, LLP
18 East 41st Street
New York, NY 10017
Telephone: (212) 213-6222
Facsimile: (212) 213-9405
counsel@nyclasslaw.com

*Attorneys for Plaintiff*

23

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAW, Case No. _____